IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GMRI, INC.,

          Plaintiff,

v.                                                                    CIVIL ACTION NO. 3:14-0866

ONETHA GARRETT; WEST VIRGINIA
HUMAN RIGHTS COMMISSION;
ROBERT B. WILSON, Deputy Chief Administrative
Law Judge; and PHYLLIS H. CARTER, the Acting
Director of the West Virginia Human Rights Commission,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion by Plaintiff GMRI, Inc., to compel arbitration and for declaratory judgment and injunctive relief (ECF No. 2). For the reasons explained below, the Court **GRANTS in part** the motion. Specifically, the Court **GRANTS a preliminary injunction** prohibiting Defendants the West Virginia Human Rights Commission ("WVHRC"), Robert B. Wilson, and whomever may replace Phyllis H. Carter[1] from:

1) Adjudicating the claims and issues that GMRI and Defendant Onetha Garrett assigned to arbitration pursuant to the 2013 Dispute Resolution Process ("DRP") or, alternatively, that DRP's prior iterations; and

---

[1] Phyllis H. Carter, Acting Executive Director of the WVHRC, was named as a Defendant in this case. She passed away after being served with a copy of the Complaint but before an answer or other responsive pleading was required to be filed. *See* Suggestion of Death of Def., ECF No. 11. According to the notice filed, no replacement Executive Director has yet been named. However, this preliminary injunction is to be equally applicable to whomever is named as her successor.

2) Interfering with the 2013 DRP or, alternatively, its prior iterations, and the arbitration agreement(s) entered into by GMRI and Ms. Garrett. This prohibition includes any WVHRC hearing regarding Ms. Garrett's complaint to the WVHRC and the issuance or execution of a decision or opinion purporting to resolve the claims that Ms. Garrett brought before the WVHRC.

The Court **HOLDS in abeyance** the remainder of GMRI's motion, which will be resolved according to the existing deadlines in this case and such other deadlines as may be entered subsequently by this Court.

## I.     Background

From 1985 to on or about May 25, 2013, Ms. Garrett was an employee at a Red Lobster restaurant in Huntington, West Virginia, which is owned and operated by GMRI. She filed a complaint with the WVHRC on April 9, 2013, alleging workplace discrimination on the basis of her race and age, in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 *et. seq*. Compl. ¶ 23, ECF No. 1. Ms. Garrett filed an amended complaint with the WVHRC on May 9, 2013. *Id.* ¶ 24. After Ms. Garrett filed her complaint with the WVHRC, GMRI commenced the instant litigation, seeking to enjoin Defendants from interfering with GMRI's alleged right to have Ms. Garrett's claims resolved through arbitration. The same day that GMRI filed its Complaint—which contains argument about arbitration—it also filed the pending motion to compel arbitration and for declaratory judgment and injunctive relief.

No party has filed a response in opposition to the motion to compel. However, Ms. Garrett's Answer provides specific arguments in opposition to arbitration. Garrett's Answer, ECF No. 10. Defendants Mr. Wilson and the WVHRC have filed a joint Answer, but that Answer does not provide argument regarding arbitration other than cursory denials of the

Complaint's allegations. WVHRC's & Wilson's Answer, ECF No. 12.

## II. Legal Standard

The Fourth Circuit has explained the legal standard applicable to preliminary injunctive relief as follows:

> In order to obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

*Kalos v. Greenwich Ins. Co.*, 404 F. App'x 792, 793 (4th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter* for this same proposition).

## III. Analysis

The Court finds that all four of the requirements for preliminary injunctive relief are met in this case and that, therefore, preliminary injunctive relief is warranted.

### A. *Likelihood of success on the merits*

The Court finds that GMRI is likely to succeed on the merits of its Complaint—that is, GMRI is likely to succeed in obtaining declaratory and permanent injunctive relief compelling arbitration and prohibiting interference with GMRI's asserted right to arbitrate.

A party moving to compel arbitration must satisfy certain elements in order to prevail on its motion:

> In the Fourth Circuit, a litigant can compel arbitration under the [Federal Arbitration Act ("FAA")] if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). The question of whether to compel arbitration entails a

very limited inquiry into the "gateway" issues of 1) "whether the parties are bound by a given arbitration clause" and 2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also* Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 692 S.E.2d 293 (W. Va. 2010) ("When a trial court is required to rule upon a motion to compel arbitration pursuant to the [FAA], the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement."). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).[2]

The first prong—the existence of a dispute between the parties—is clearly met and not in dispute by the parties, as Ms. Garrett did in fact file a complaint with the WVHRC. The third prong—relationship to interstate or foreign commerce—is also clearly met because GMRI does business across state lines in owning and operating its restaurants. Mem. Supp. Mot. Compel Arb. 7. The fourth prong is also met; in fact, Ms. Garrett concedes that she refused to arbitrate. *See* Garrett's Answer 15.

The parties disagree about whether the second prong is met—in other words, whether there is a written agreement that includes an arbitration provision which covers the dispute. As

---

[2] GMRI argues that "[t]he parties have clearly and unmistakably provided that the arbitrator should decide" whether an arbitration agreement exists and whether the agreement covers Ms. Garrett's claims. Mem. Supp. Mot. Compel Arb. 8, ECF No. 3. However, GMRI does not point to any specific provisions which provide such an exception to the general rule. Regardless, for the purposes of deciding whether preliminary injunctive relief is warranted, it is necessary for the Court to inquire into all four prongs applicable to motions to compel arbitration.

explained in the Complaint, Ms. Garrett signed acknowledgments that she understood and agreed to be bound by various iterations of GMRI's DRP—which included the requirement that parties arbitrate employment disputes—in 1999, 2002, and 2008.[3] Compl. ¶¶ 12-17, 20. Additionally, she attended a training about an updated DRP in 2005. *Id.* ¶¶ 18, 19.

Ms. Garrett argues that although the DRPs may prohibit covered claims from being pursued in a court, the DRPs do not prohibit bringing such claims in an administrative proceeding, such as a WVHRC hearing. Garrett's Answer 5. Although the DRPs may not mention administrative proceedings explicitly, it appears at this point that the agreements prohibit *any* dispute resolution mechanisms outside of those explicitly allowed in the DRPs. The Court has not found any provision thus far which allows administrative hearings, which leads the Court to conclude that administrative hearings are prohibited.

GMRI updated the DRP in 2013, but rather than having employees sign a new acknowledgment, it instead posted a notice about the updates in its restaurants, including the Red Lobster in Huntington. *See* Ex. 9 (notice of 2013 DRP update), ECF No. 1. That notice stated, in pertinent part, that "[b]y coming to work here after July 15, 2013[,] you and the Company agree to be bound by the updated Dispute Resolution Process." *Id.* Ms. Garrett claims that she never signed any agreement or acknowledgment about the DRP in 2013. Because the 2013 policy did not become effective until July 15—after she stopped working—it is not clear that the 2013 policy even applies to her. Regardless, the 2013 agreement does not appear to change the parties' obligations to arbitrate employment discrimination issues. Therefore, it appears that GMRI could likely satisfy the second prong.

---

[3] Although a copy of the 2008 DRP is not provided, there is no indication that the 2008 iteration of the DRP deviated from other iterations in insisting on arbitration as the final step for resolving employment disputes.

Ms. Garrett points out that arbitration clauses can be attacked pursuant to state contract principles, including unconscionability. Garrett's Answer 3. The Court agrees with that proposition. Ms. Garrett further argues that, if the arbitration agreement is applicable to her, that agreement "is an unconscionable contract of adhesion [and] it lacked consideration." *Id.* However, she argues no facts in support of that assertion. Because she does not even attempt to argue why the contract is unconscionable or lacks consideration, such arguments do not impact this Court's finding of GMRI's likelihood of success on the merits.

Additionally, Ms. Garrett cites to Syllabus Point Two of *Copley v. NCR Corporation* for the proposition that, "[u]nder West Virginia law, an arbitration clause in an employment contract cannot defeat a human rights action filed by the claimant pursuant to W. Va. Code, 5-11-13(b) (1983)." Syl. Pt. 2, 394 S.E.2d 751 (W. Va. 1990). She suggests that, based on that case, she cannot be forced to pursue relief solely through arbitration. This is the only case she cites in support of this argument, and importantly, that syllabus point from *Copley* no longer stands in light of subsequent legal developments. As explained by the Fourth Circuit after mentioning that same point from *Copley*, "Whatever force *Copley* may formerly have had, its ruling on arbitration cannot trump *Gilmer* [*v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)] and *Circuit City v. Adams*[, 532 U.S. 105 (2001)]. The Supremacy Clause precludes any argument to the contrary." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (noting "*Gilmer*'s and *Adams*' endorsement of arbitration as a substantively equivalent means of resolving statutory claims pertaining to employment"); *see also Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 90-91 (4th Cir. 2005) (citing *Adkins* for the proposition that this portion of *Copley* is no longer valid).

The Supreme Court has also spoken on this issue. In *Southland Corporation v. Keating*,

the Supreme Court discussed the enactment of the FAA, noting that "[i]n creating a substantive rule applicable in state as well as federal courts[,] Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. 1, 16 (1984) (footnote omitted). In that case, the California Supreme Court below had interpreted a provision of the California Franchise Investment Law to mean that agreements to arbitrate claims covered by the Law were unenforceable. The Supreme Court struck down that interpretation, noting that otherwise "states could wholly eviscerate Congressional intent to place arbitration agreements upon the same footing as other contracts, simply by passing statutes such as the Franchise Investment Law. We have rejected this analysis because it is in conflict with the Arbitration Act and would permit states to override the declared policy requiring enforcement of arbitration agreements." *Id.* n.11 (citation omitted) (internal quotation marks omitted). Based on this evidence, it appears likely that the FAA preempts West Virginia law (in this case, the WVHRA) to the extent that it interferes with the right of GMRI to arbitrate its dispute with Ms. Garrett pursuant to the arbitration agreement.

Ms. Garrett also states that arbitration is not an effective means for the vindication of her rights under the WVHRA, but she provides no facts to support this argument. Therefore, that argument is not considered.

On the basis of the evidence presented, the Court finds that GMRI is likely to succeed on the merits of its underlying action, namely, its motion to compel arbitration and for declaratory and permanent injunctive relief.

### B. *Likelihood of suffering irreparable injury*

If a preliminary injunction is not granted, GMRI will likely suffer irreparable harm. *See, e.g.*, *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988)

7

(noting "serious, perhaps irreparable, consequence" being denied arbitration (citation omitted)); *Reliance Nat. Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) ("Reliance will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with Seismic."). GMRI would be deprived of the benefits of its arbitration agreement. The parties have not updated the Court concerning whether, in fact, the scheduled WVHRC administrative proceeding regarding Ms. Garrett's claims occurred or the outcome of any such hearing. Therefore, preliminary injunctive relief could possibly still prevent the irreparable harm that GMRI faces.

### C. *Balance of equities*

The balance of equities favors granting a preliminary injunction. Although Ms. Garrett has an interest in the resolution of her claims, those claims can just as adeptly be resolved through arbitration as through an administrative proceeding. No other issues of equity appear to the Court which would merit a finding that this requirement is not satisfied.

### D. *Injunction being in the public interest*

The Court finds that a preliminary injunction is in the public interest. Such an injunction serves the purposes underlying the creation of the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), *superseded by statute on other grounds,* 9 U.S.C. § 16(b)(1). Although there is a public interest in the adjudication of discrimination claims, that interest can just as successfully be met through arbitration.

### IV. Conclusion

For the reasons explained above, the Court **GRANTS a preliminary injunction** as outlined at the beginning of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 4, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE